**CITY OF ST. LOUIS, Plaintiff-Respondent,**

v.

**Leonard MALOY, Defendant-Appellant.**

No. 34190.

Missouri Court of Appeals,
St. Louis District.

Aug. 15, 1972.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 20, 1972.

Application to Transfer Denied Nov. 13, 1972.

Hale W. Brown, Kirkwood, for defendant-appellant.

Robert W. Van Dillen, City Counselor, Charles W. Kunderer, Raymond Isa, Asst. City Counselors, St. Louis, for plaintiff-respondent.

DOWD, Presiding Judge.

In this court tried case, defendant Leonard Maloy was convicted of violating Section 395.060(c) of Ordinance 52328 of the City of St. Louis which makes it unlawful for a property owner to discriminate on the basis of race, religion, or nationality, in the use or management of a housing accommodation. Defendant was fined $50.00 and costs. Defendant appeals.

The record discloses that defendant and his wife are owners of a two-family flat located at 3918 Pennsylvania in the City of St. Louis. Defendant and his wife lived in three rooms downstairs and in March, 1970, rented the upstairs three room flat on a month to month tenancy to one Kenneth O'Day and his wife, who are white.

On April 7, 1970, Kenneth O'Day entertained Simon Meeks, a black person, in his rented flat. Mr. O'Day testified that the next morning defendant told him " * * * he no longer wanted me to have black friends in the house; said he personally disliked having black people in his house; also conjectured what neighbors might think and what it might do to the neighborhood." Defendant also told Mr. O'Day in this same conversation " * * * if we weren't happy living in this apartment we could find another place to live. * * *" Mr. O'Day's reply to defendant was that he would discuss it with his wife and decide what they wanted to do.

Three months later, on July 19, 1970, Mr. O'Day advised defendant that he and his wife had decided that they would feel free to have a black guest in their flat and that if defendant wanted them to leave on those terms, he would have to evict them. Mr. O'Day testified that defendant's only

comment to him on that occasion was: "Well, as I said before, if you aren't happy here you may go ahead and leave."

The mother of Mr. O'Day testified that she and her husband had been friends of the Maloys and on that same day (July 19, 1970) Mr. and Mrs. Maloy came to their home in St. Louis County. During that visit defendant told her: "Well, that they had a problem with Kenneth and Gwen (her son and daughter-in-law); they had had Simon in their home and he didn't approve of a black man being in their home. * * *" While the defendant did not tell Mrs. O'Day that he was going to evict her son, he did say that if " * * * they weren't happy they should move. He wanted to protect his property."

Mr. Maloy, testifying on his own behalf, stated that on July 24, 1970, he had his lawyer draw up an eviction notice. This was five days after Mr. O'Day had told defendant that if he wanted them (the O'Days) out he would have to evict them. Mr. Maloy denied that the discrimination was the basis for his eviction but stated that he intended to sell the property and that it was easier to sell if the O'Days' apartment was vacant. However, the defendant did admit that he had asked the O'Days not to have colored friends coming into their apartment.

On the evening of July 28, 1970, the O'Days again had Simon Meeks in their apartment as a guest, although it is not clear whether defendant was aware of this visit. The next day, July 29, 1970 defendant delivered the notice to terminate. The record shows that the eviction notice was followed by an eviction suit against the O'Days which is pending in the Circuit Court of St. Louis County.

The defendant raises two points on this appeal: (1) that the information did not "state a charge against appellant" for the reason that it does not allege that appellant refused to sell or rent real estate to any person because of race, color, or creed; (2) that the evidence was insufficient to sustain a conviction because "there was no showing that the appellant had discriminated because of race, color, or creed * *."

■ The information charging defendant with a violation of the antidiscrimination ordinance alleged that: " * * * on or about the 29th day of July, 1970, within the corporate limits of St. Louis, Missouri, at or near 3918a Pennsylvania, above-named defendant did then and there unlawfully commit discrimination in the use and management of an interest in a housing accommodation, to wit: Leonard Maloy, an owner of an interest in a housing accommodation located at 3918a Pennsylvania in the City of St. Louis, did unlawfully serve a notice upon Kenneth O'Day to vacate said housing accommodation, to wit: an apartment, upper floor at 3918a Pennsylvania, rented and occupied by said Kenneth O'Day, by reason of association of said Kenneth O'Day with one Simon Meeks, a Negro, at the aforesaid housing accommodation on April 7, 1970, and July 28, 1970, for the reason the aforesaid Simon Meeks is a Negro, in violation of Section 395.060(c) * * *."

The ordinance under which the defendant was convicted reads as follows:

"It shall be unlawful for: * * * Any person, including, without limiting the generality of the foregoing, any owner of any interest in a housing accommodation, to attempt or commit a discrimination in the use, management or disposition of such interest in a housing accommodation; * * *." Section 395.060(c) of the Revised Code of St. Louis, 1960 as amended. (Emphasis added.)

Discrimination is defined in Section 395.050(d) as " * * * a distinction based upon race, religion, national origin or ancestry, under circumstances where such distinction is arbitrary, capricious or unreasonable; * * *."

■ Defendant's first point that the information "did not state a charge" because it failed to allege that defendant refused to sell or rent to any person because of race, color, or creed is without merit. The information here is bottomed on a discrimination in *the use of* a housing accommodation which is specifically prohibited by the ordinance. The *use* of a rented premises certainly includes the right to entertain guests of one's own choosing. The information substantially follows the language of Section 395.060(c). An information in an ordinance violation case is ordinarily sufficient where it describes the act complained of in the language of the ordinance. Kansas City v. Stricklin, Mo., 428 S.W.2d 721, 725, 726; Kansas City v. Caresio, Mo., 447 S.W.2d 535, 536. It is clear that the information apprised defendant that he violated the ordinance because of his attempt to evict the tenant because of the tenant's association with a black person in the rented premises. We find the information sufficient to charge a violation of the ordinance.

■ We likewise disagree with appellant's second contention that the evidence was insufficient to sustain a conviction. In this court tried case we review the law and evidence as in suits of an equitable nature giving due regard to the opportunity of the trial court to judge the credibility of witnesses. City of St. Louis v. Cook, Mo. App., 405 S.W.2d 545. We do not set aside the judgment unless clearly erroneous. Supreme Court Rule 73.01(d) V. A.M.R. Likewise, in our review we consider the evidence and all favorable inferences reasonably to be drawn therefrom in the light most favorable to the City and inferences and evidence to the contrary are disregarded. State v. Todd, Mo.App., 477 S.W.2d 725, 728; Kansas City v. Douglas, Mo.App., 483 S.W.2d 760 (Kansas City District, filed July 25, 1972). With these principles in mind, we turn to the evidence in the record.

■ On April 7, 1970, the O'Days had a black guest in their home, and the next day defendant told them he didn't like it and didn't want it to happen again and if the O'Days didn't like it they could move. Three months later, on July 19, 1970, the O'Days informed Mr. Maloy that they would have black guests in their apartment and if he did not like it he would have to evict them. On this same day, the defendant told Mr. O'Day's mother that he did not approve of her son having a black man in the apartment. On July 24, just five days later, Mr. Maloy had his lawyer draw up an eviction notice which he served on the O'Days on July 29, 1970. The defendant himself testified that he had asked the O'Days not to have colored friends visiting them. We believe this evidence was sufficient to support an ordinance conviction that the defendant committed a discrimination in the use and management of his rental property.

Defendant offered evidence to the effect that the service of the eviction notice was not racially motivated. This evidence is contrary to the City's evidence. It was the function of the trial judge to determine the credibility of the witnesses.

The judgment is affirmed.

BRADY, C. J., concurs.

ROBERT LEE CAMPBELL, Special Judge, dissents in opinion filed.

ROBERT LEE CAMPBELL, Special Judge (dissenting).

I respectfully dissent. Although I concur with all of the law set forth in the majority opinion, I disagree only as to the result reached. In this court-tried case we review the law and evidence as in suits of an equitable nature, giving due regard to the opportunity of the trial court to judge the credibility of witnesses, as set forth in the majority opinion.

The majority opinion refers to statements made by defendant to the mother of Mr. O'Day on July 19, 1970. In my opinion, the cross-examination of this witness totally destroyed the credibility of the witness, and we should ignore such testimony. I would conclude that any statements made to this witness were made by the wife of defendant, who is not charged with violation of the ordinance.

The record is clear that appellant made the discriminatory statements to Mr. O'Day on April 8. The record is devoid of any further statements or acts of discrimination between April 8 and July 29, when appellant served the O'Days with a notice of termination of tenancy. The record also discloses that appellant had listed his property for sale with a real estate company and that he was advised that it would be easier to sell if it was vacant. Appellant served the notice to terminate tenancy for this reason, and so he could fix up the property and make it presentable. Appellant went to his attorney's office on July 24, 1970, to have the notice to terminate tenancy prepared. Appellant testified that he did not know that Simon Meeks was a guest at the house the night before he served the notice to terminate tenancy on July 29, and Mr. O'Day testified to the effect that he did not know if appellant knew Simon Meeks had been at the house the night before. The notice to terminate tenancy expressly referred to appellant's intention to sell the building and that it was "to expedite the sale of the property". A former tenant of appellant testified that she and her husband had lived in the premises for five years, had had black friends visit at the house, and had never received any complaints from appellant.

When I review the record as a whole and reach my own conclusion therefrom, I would find that the evidence is insufficient to support a judgment of conviction, and would reverse the judgment.